**Barrier Group Inc. v BMF Advance LLC**

2023 NY Slip Op 34578(U)

March 15, 2023

Supreme Court, Orange County

Docket Number: Indez No. EF004150/2022

Judge: Elena Goldberg-Velazquez

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

**To commence the statutory time period
For appeals as of right (CPLR § 5513[a]),
you are advised to serve a copy of this
order, with notice of entry,
upon all parties.**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE
-------------------------------------------------------------------------x
THE BARRIER GROUP INC. D/B/A DRIP DROP
WATERPROOFING, FORTUNE REAL LLC D/B/A
FORTUNE REAL, SUB ENTERPRISES INC. D/B/A
SUB ENTERPRISES, 131 CLARK STREET LLC D/B/A
131 CLARK STREET, FOAM RITE INC D/B/A
FOAM RITE, SJP REAL LLC D/B/A SJP REAL,
UPSTATE REAL LLC D/B/A UPSTATE REAL,
AND JOEL REICH,

                                Plaintiff(s),
                           -against-

BMF ADVANCE LLC, A NEW YORK LIMITED
LIABILITY COMPANY, GAVRIEL TITZCHAKOV,
AND STEVEN ZAHARYAYEV,

                             Defendant(s).
-------------------------------------------------------------------------x

DECISION & ORDER
Index No. EF004150-2022

Motion Seq. 2

*Hon. Elena Goldberg-Velazquez, J.S.C.*

The following papers numbered 1 – 4 were considered in connection with Defendants

Notice of Motion (Motion #2) for an Order pursuant to *Civil Practice Law and Rules* §§

3211(a)(1) and (7) dismissing the Amended Complaint of Plaintiffs based upon a defense

founded upon documentary evidence and for failure to state a cause of action, and for such other

and further relief as the Court deems just and proper:

**PAPERS**                                                                        **NUMBERS**

Notice of Motion (Motion #1)/Affirmation of Steven W. Wells, Esq./
Exhibits 1-9/Memorandum of Law in Support                                   1

1

Memorandum of Law in Response to Defendants Motion to Dismiss/Exhibit L     2

Defendants' Reply Memorandum of Law in Further Support of their Motion to Dismiss Plaintiffs' Amended Complaint     3

Supplemental Affirmation of Steven W. Wells, Esq./Exhibit 1     4

## PROCEDURAL HISTORY

Plaintiff commenced the instant action with the e-filing of a Summons and Civil Complaint on July 25, 2022. Plaintiff also e-filed an Order to Show Cause (Motion #1) on July 26, 2022, seeking to stay the Judgment in the case, *BMF v. THE BARRIER GROUP INC. D/B/A DRIP DROPWATERPROOFING, FORTUNE REAL LLC D/B/A, FORTUNE REAL, SUB ENTERPRISES INC. D/B/A SUB ENTERPRISES, 131 CLARK STREET LLC D/B/A 131 CLARK STREET, FOAM RITE INC D/B/A FOAM RITE, SJP REAL LLC D/B/A SJP REAL, UPSTATE REAL LLC D/B/A UPSTATE REAL,AND JOEL REICH*, Index # EF004023-2022 pending decision on the Complaint in the instant action. On July 26, 2022, The Honorable James L. Hyer, J.S.C. granted the stay pending a hearing and determination on the motion and directed service of the Order and the supporting papers by overnight delivery.[1] Additionally, Defendants were directed that opposition was to be filed and served on Plaintiff via overnight delivery by August 12, 2022, and the parties were to appear on August 19, 2022, for oral argument on the Order to Show Cause.

Plaintiff's counsel filed an Affidavit of Service from "Olivia Merth" indicating that the Summons, Complaint and the annexed exhibits, the Order to Show Cause and the supporting

---

[1] A review of the Proposed Order to Show Cause and the supporting papers filed with it (NYSCEF DOCS # 14-16) indicate the application is "EXPARTE" but there is no Affidavit of Emergency or compliance with 22 NYCRR 202.7(f). Nonetheless, the Court granted the emergency relief on the same date that the Order to Show Cause was filed.

papers were mailed to "2 NE Third St Unit 6B, Cohasset, MN 55721," and sent to Defendants BMF ADVANCE LLX at 1820 Ave M Suite 125, Brooklyn, NY 11230, GAVRIEL YITZCHAKOV at 1820 Ave M Suite 125, Brooklyn, NY 11230 and STEVEN ZAKHARYAYEV at 1430 Broad Street Suite 402, New York, NY 10018 by "Overnight Mail."[2]

On August 4, 2022, Attorney Steven W. Wells of Wells Law P.C. filed a Notice of Appearance in the instant action on behalf of all three Defendants. Subsequently, Attorney Wells on behalf of the Defendants filed opposition to the Order to Show Cause (Motion #1) on August 12, 2022. Plaintiff filed an Affirmation of Reply on August 17, 2022, which was rejected by Defendants' counsel via a Notice of Rejection on August 18, 2022. Plaintiff's counsel objected to the Notice of Rejection via a letter on August 20, 2022.

On August 22, 2022, the parties appeared before the Honorable James L. Hyer, J.S.C. for oral argument as to the Order to Show Cause (Motion #1). The transcript of the appearance was uploaded to NYSCEF on August 30, 2022 (NYSCEF Doc. # 34) as directed at the conference but was never "So Ordered" by the Court. A review of the transcript demonstrates that the stay sought in the Order to Show Cause (Motion #1) was granted, and a discovery order was ordered by the Court.[3] The discovery order was memorialized in a Preliminary Conference Order dated

---

[2] The instant Affidavit of Service is the only documentation indicating that the Defendants were served with the Summons and Complaint in this matter. The instant Affidavit of Service does not indicate compliance with *Civil Practice Law and Rules* § 308. Additionally, the Plaintiff never e-filed any application for substituted service. Also, the Affidavit of Service indicates that "Olivia Merth" is signing the Affidavit of Service in the "State of New York, County of Orange," but the notary (which is on a separate page with an electronic signature and in a different font) indicates that the notary was present in the State of Florida, County of Pasco and the "Notarial Act [was] performed by Audio-Video Communication." The Defendants have since appeared in this action, filed a Notice of Appearance, appeared at a conference before Judge Hyer and engaged in discovery and therefore any issue of personal jurisdiction has been waived.

[3] During the appearance there was no discussion or record made about the filing of an Answer by the Defendants and no application was made on the record for an extension to file an Answer. As of the date of this Decision and Order an Answer has not been filed by any of the Defendants, the Court has received no application for an extension for time to file an Answer and there has been no stipulation e-filed between the parties allowing same.

[* 3]

August 22, 2022, based upon a preliminary conference occurring on August 22, 2022.

On October 6, 2022, the Defendants filed the instant Motion to Dismiss (Motion #2), and the parties continued to engage in discovery as directed by Judge Hyer's August 22, 2022, Order. Opposition was filed by Plaintiffs along with a Reply by the Defendants. Counsel for both parties submitted a joint letter to the Court dated November 7, 2022, seeking an extension of the discovery timelines set forth by the Court "for good cause shown." Specifically, both parties indicated that there was no prejudice to the Defendant in light of the fact that no Answer had been filed by the Defendants, there was a pre-answer Motion to Dismiss pending and discovery was not fruitful since the Defendant's affirmative defenses were unknown at this time. Further, the parties stated that they believed the Plaintiff would be prejudiced by continuing to engage in the discovery schedule without a decision as to the Motion to Dismiss and determination as to the necessity for the Defendants to file an Answer. As the basis for the good cause the parties indicated in the letter:

> Defendants, therefore, have not yet filed their Answer, as such Answer will only be due if the Court denies Defendants' motion to dismiss, in which case it will be due within ten days after notice of entry of the order. See CPLR 3211(f). As Defendants have not yet filed their Answer, Plaintiffs do not know what affirmative defenses Defendants will assert. Plaintiffs, therefore, have not been able to serve a Bill of Particulars specifically tailored to amplification of any affirmative defenses asserted by Defendants in their Answer.... Nor have Plaintiffs been able to meet and confer with Defendants regarding documents and information that Defendants may use to support any affirmative defenses.

On November 15, 2022, Plaintiff's counsel sought a hearing for oral argument on Defendant's Motion to Dismiss. The requests were denied by the Court and a compliance conference was scheduled for January 2023. Subsequent to the scheduling of the January 2023 compliance conference counsel for the Defendants submitted a Supplemental Affirmation with a decision on a newly decided matter alleged to be similar to the instant action annexed to the Affirmation.

4

[* 4]

The matter was heard virtually for a compliance conference on January 31, 2023, by the undersigned. At the appearance the parties renewed their application to stay discovery pending the decision on the instant Motion to Dismiss. Their application was granted and an Order granting same was issued on January 31, 2023.

## ARGUMENTS/ANALYSIS

This is an action to seeking to vacate a judgment of confession that Defendant obtained against Plaintiff on or about July 19, 2022, in the State of New York, Supreme Court, Orange County, in a prior action entitled *BMF v. THE BARRIER GROUP INC. D/B/A DRIP DROP WATERPROOFING, FORTUNE REAL LLC D/B/A, FORTUNE REAL, SUB ENTERPRISES INC. D/B/A SUB ENTERPRISES, 131 CLARK STREET LLC D/B/A 131 CLARK STREET, FOAM RITE INC D/B/A FOAM RITE, SJP REAL LLC D/B/A SJP REAL, UPSTATE REAL LLC D/B/A UPSTATE REAL,AND JOEL REICH* bearing Index No. EF004023-2022. Plaintiffs commenced the instant action to vacate the July 19, 2022, confession of judgment due to usury, refusal to reconcile, fraud, unconscionability, violations of 18 U.S.C. § 1962(c) (the RICO Act) and based upon a violation *Judiciary Law* § 487.

Plaintiffs have alleged that the Confession of Judgment should be vacated as the Agreement it is based upon is usurious, that the reconciliation provisions in the Agreement were a sham designed to disguise the Agreement as a purchase accounts receivable rather than a loan and that the Defendants did not maintain a reconciliation department and refused to provide Plaintiff with reconciliation prior to filing the confession of judgment, that the Defendants engaged in fraud in inducing the Plaintiffs to enter into the Agreement including false representations regarding fees, that the Agreement is an unconscionable contract of adhesion not

5

[* 5]

negotiated at arms-length, that the debt owed to Defendant by Plaintiff is an unlawful debt pursuant to 18 U.S.C. § 1962(c) and 18 U.S.C. § 1961(6), that all Defendants unlawfully, knowingly, and willfully combined, conspired, confederated and agreed with members of the Enterprise to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962 (d) and Defendant Steven Zakharyayev violated *Judiciary Law* § 487 by conspiring with other Defendants by participating in the "Enterprise" and submitting documents in support of the Confession of Judgment that omitted key facts in an effort to deceive the Court.

The Plaintiffs commenced the instant action seeking to vacate a judgment entered upon the filing of an affidavit of confession of judgment.   Generally, a party seeking to vacate a judgment that has been entered upon the filing of an affidavit of a confession of judgment must commence a separate plenary action to obtain that relief.  *See Funding Metrics, LLC v. A & A Fabrication and Polishing Corp.*, 187 AD3d 857 (2d Dept 2020) *quoting Moroncho v. Monterroza*, 170 AD3d 710, 711 (2d Dept 2019); *Regency Club at Wallkill, LLC v. Bienshi*, 95 AD3d 879 (2d Dept 2012); *Rubino v. Csikortos*, 258 AD2d 638 (2d Dept 1999); L.R. Dean, Inc. v. International Energy Resources, Inc., 213 AD2d 455, 456 (2d Dept 1995); *City of Poughkeepsie v. Albano*, 122 AD2d 14 (2d Dept 1986).   "The policy behind requiring a plenary action to vacate judgments by confession is that 'sharply contested issues of fact should not be resolved upon affidavits, but rather by trial in a plenary action'" *NRO Boston, LLC v. Yellowstone Capital, LLC*, 72 Misc3d 267, 277 (Rockland Cty., Sup. Ct., 2021) *quoting Scheckter v. Ryan*, 161 AD2d 344 (1st Dept 1990).   However, a judgment by confession may be vacated upon a motion by the judgment debtor when they demonstrate that the judgment was entered without authority, which includes a challenge to the debtor's compliance with the requirements of *Civil Practice Law and Rules* § 3218.  *See Ripoli v. Rodriguez*, 53 AD2d 638 (2d

6

Dept 1976).

Here, Plaintiffs assert that the contract at issue is not what it purports to be, an agreement to purchase future accounts receivables, but rather is a disguised loan which contains hidden provisions in fees which looked at in the aggregate charge usurious interest far in excess of New York State's permitted civil rate of usury at 16% and criminal rate of usury at 25%. According to Plaintiff the instant Agreement is a usurious loan that is void on its face and relieves the Plaintiff of his obligations under the Agreement and invalidates the Confession of Judgment filed on July 1, 2022, by the Defendants.

## VACATUR OF CONFESSION OF JUDGMENT FOR FAILURE TO COMPLY WITH CIVIL PRACTICE LAW AND RULES § 3218(a)(2)

Plaintiffs also move to vacate the Confession of Judgment on the grounds that the Affidavit of Confession of Judgment does not comply with *Civil Practice Law and Rules* § 3218(a)(2). Specifically, Plaintiffs cite to and emphasizes the language in section (a)(1)[4] that states "showing that the sum confessed is justly due or to become due." According to Plaintiff the Affidavit of Gavriel Yitzchakov filed with and supporting Defendant's application for a judgment alleges that Plaintiffs breached the Agreement between themselves and Defendants. Plaintiff contends that Yitzchakov's Affidavit is insufficient and fails to comply with *Civil Practice Law and Rules* § 3218 because it does not mention the communication between Plaintiff Reich and Gavriel Yitzchakov[5] regarding Plaintiff's request for reconciliation and the requests

---

[4] Plaintiff's incorrectly references § (a)(1) but cites the language from § (a)(2). The Court considers the incorrect reference a typographical error and references the correct section in further discussion of Plaintiffs' application.
[5] The emails submitted by Plaintiff as to the communication indicate that Plaintiff was communicating with a person named Gabriel Isaacov, not Gavriel Yitzchakov. The Court is left to assume that Gabriel Isaacov is an alias for Gavriel Yitzchakov, as Plaintiff has not clarified same.

7

[* 7]

denial. Plaintiffs cite an Appellate Division, Second Department matter, *Cole-Hatchard v. Nicholson*, 73 AD3d 834 (2d Dept 2010), which they assert states that judgment of confession that does not have sufficient factual description is subject to vacatur and may be deemed unenforceable in support of their argument. The Defendants did not address Plaintiff's allegation regarding Defendant's failure to comply with *Civil Practice Law and Rules §* 3218(a)(2) in the instant Motion to Dismiss despite it being raised in the Amended Complaint (paragraphs 31 – 37) and incorporated in each cause of action.

Turning first to the Plaintiff's argument that the Confession of Judgment should be vacated based upon the Defendants failure to comply with *Civil Practice Law and Rules §* 3218(a)(2). Plaintiffs concede that the judgment of confession entered was authorized by the Confession of Judgment signed by Plaintiff Joel Reich on April 27, 2022, but argue that the resultant Judgment is nevertheless void because Gavriel Yitzchakov failed to inform the Court in his Affirmation[6] that there was a dispute between the parties regarding reconciliation. Plaintiffs appear to argue this omission in Gavriel Yitzchakov's Affidavit renders it "insufficient," not that the Confession of Judgment signed by Plaintiff Reich is "insufficient."

*Civil Practice Law and Rules §* 3218(a)(2) provides requirements for the "Affidavit of defendant" including that the judgment that the defendant (Plaintiff in the instant action) is confessing is for money due and there is a statement with concise facts as to how the debt arose and that the sum confessed is justly due or to become due. The procedures of § 3218 are in place to limit the necessity for litigation by identifying a claim at the beginning of a parties' agreement

---

[6] Plaintiff refers to an "Affirmation" submitted by Gavriel Yitzchakov in support of the entry of judgment. However, the document annexed to the Plaintiff's Complaint is entitled "Affidavit in Support of Entry of Judgment." (NYSCEF Doc # 9).

[* 8]

and agreeing to a judgment at the outset. *Civil Practice Law and Rules* § 3218 sets forth requirements for the affidavit executed by the debtor (the Plaintiffs in this matter) not the plaintiffs (creditor) in an action. In Plaintiffs' Complaint they seek vacatur of the Confession of Judgment by challenging the affidavit of the creditor, not the debtor. Plaintiffs' assertion that the Affidavit of Gavriel Yitchakov fails to comply with the requirements set forth in § 3218 is misplaced, as it is not the affidavit for which the requirements are set forth and cannot be the basis of vacatur of the Confession of Judgment. Plaintiff makes no argument that the Confession of Judgment signed by Plaintiff Joel Reich does not comply with the requirements set forth in *Civil Practice Law and Rules* § 3218. Plaintiff is mistakenly applying the requirements for Confession of Judgment to the affidavit of the creditor seeking the judgment asserting that they would have to explain efforts between the parties to cure or challenge a default by Plaintiffs. Nothing within the requirements of *Civil Practice Law and Rules* § 3218 dictates that a plaintiff creditor must explain how a defendant debtor breached their agreement or defaulted. As such, Plaintiffs' argument seeking vacatur pursuant to § 3218 is a red herring that this Court finds insufficient as a basis for vacatur of the Confession of Judgment obtained in the related action, Index # EF004023-2022.

Nonetheless, since the Plaintiff has raised the issue, this Court has considered whether the Affidavit of Joel Reich signed on April 27, 2022, and filed in the related action EF004023-2022 on July 28, 2022 (NYSCEF Doc #1) complies with the requirements set forth in *Civil Practice Law and Rules* § 3218. The terms of the confession indicate in paragraph twelve (12) that the "Confession" was executed in the event of default on the "Future Receivables Sale and Purchase Agreement dated April 26, 2022." There is no specific section within the agreement that precludes entry of the Confession until a default has occurred and Defendant could have filed the

9

[* 9]

Confession prior to the Plaintiff Debtor's default as a security without seeking a judgment until the default actually occurred. However, in the instant action Defendants (creditors) did not file the Confession of Judgment until July 2022, several weeks after the Plaintiffs were in default of the Agreement due to non-payment after June 16, 2022. Any argument by Plaintiffs for vacatur of the Confession of Judgment based upon insufficiency of Reich's Affidavit is of no moment since § 3218 does not provide requirements as to the plaintiff creditors affirmation/affidavit and in the instant action the Defendants did not seek a judgment until the Plaintiffs had defaulted on the Agreement making their demand for reconciliation unnecessary information as to the enforcement of the Confession of Judgment.

As stated previously, the Court has considered the documentary evidence annexed to the Complaint, Plaintiff's Order to Show Cause (Motion #1), Defendant's instant Motion to Dismiss and Plaintiff's opposition. The review has demonstrated that on June 14, 2022, the Plaintiff sought reconciliation after making a payment as part of an agreement with Defendant to cure a default that had occurred several times prior to June 13, 2022. The emails between Plaintiff and Defendant demonstrate that to remove Plaintiff from their "default" status they needed to submit two (2) payments on June 13 and have no further "bounces." Plaintiff complied on June 13, 2022, and wired Defendant two (2) payments, but then again had insufficient payments (i.e. "bounces") beginning on June 16, 2022. Therefore, the Plaintiff failed to comply with both requirements agreed upon between the parties to remove Plaintiffs' "default" status. As such, at the time the Plaintiff filed the Confession of Judgment in July 2022 the statement in paragraph six (6) of the Affidavit of Gavriel Yitzchakov indicating that the Plaintiffs breached the Agreement was accurate and demonstrated that the sum confessed by Plaintiffs "is justly due" to the Defendants and in compliance with *Civil Practice Law and Rules* § 3218(a)(2).

10

[* 10]

## DEFENDANT'S MOTION TO DISMISS PURSUANT TO CIVIL PRACTICE LAW AND RULES §§ 3211(a)(1) and (7)

In the first four causes of action, Plaintiff seeks affirmative relief of vacatur of the Confession of Judgment dated July 19, 2022, and invalidation of the underlying Agreement, based upon usury, a refusal to reconcile, fraud and unconscionability all predicated on the argument that the Agreement is a loan. Plaintiff also seeks restitution of moneys collected by Defendant, an accounting and reconciliation of all the funds remitted to Defendants, a finding that the fees set forth in the Agreement are in fact interest and assist in disguising the true nature of the Agreement which Plaintiff alleges is a loan and finding the terms are unconscionable including the requirement for the Plaintiff to cover a set amount of attorney's fees if the Agreement is challenged.

Defendants have filed the instant Motion to Dismiss pursuant to *Civil Practice Law and Rules* §§ 3211(a)(1) and (7). In support of their motion Defendants have referenced the documents annexed to the Plaintiffs' Complaint, documents annexed to their opposition to Plaintiff's Order to Show Cause (Motion #1) and provided additional documents including seven (7) decisions of other courts they indicate address the same issues presented before the undersigned and a hearing transcript from a proceeding before the Supreme Court, Nassau County which they also assert addresses the same issues presented in the instant matter.

*Civil Practice Law and Rules* § 3211(a)(1) provides that "[a] party may move for judgment dismissing one or more causes of action asserted against him on the ground that…a

11

[* 11]

defense is found upon documentary evidence…" To successfully move to dismiss a complaint pursuant to *Civil Practice Law and Rules* § 3211(a)(1), the movant must present documentary evidence that resolves all factual issues as a matter of law, and conclusively disposes of the plaintiff's claim. *See AGCS Mar. Ins. Co. v. Scottsdale Ins. Co.*, 102 AD3d 899, 900 (2d Dept 2013) *quoting Nevin v. Laclede Professional Prods.*, 273 AD2d 453 (2d Dept 2000); *See Ruffino v. Serio*, 206 AD3d 775 (2d Dept 2022); *Goshen v. Mut. Life. Ins. Co.*, 98 NY2d 314 (2002).

*Civil Practice Law and Rules* § 3211 (a)(7) provides that a party may move to dismiss an action on the ground that "the pleading fails to state a cause of action." " On a motion to dismiss pursuant to CPLR § 3211, the complaint is to be afforded a liberal construction" and the facts alleged are generally accepted as true and afforded every possible favorable inference. *Benitez v. Bolla Operating LI Corp.*, 189 AD3d 970 (2d Dept 2020); *Gorbatov v. Tsirelman*, 155 AD3d 836 (2d Dept 2017); *See Rushaid v. Pictet & Cie*, 28 NY3d 316 (2016). Further, "[i]n reviewing a motion pursuant to CPLR § 3211(a)(7) to dismiss the complaint for failure to state a cause of action, the facts as alleged in the complaint must be accepted as true, the plaintiff is accorded the benefit of every possible favorable inference, and the court's function is to determine only whether the facts as alleged fit within any cognizable legal theory." *Benitez v. Bolla Operating LI Corp.*, 189 AD3d at 970 *quoting Mendelovitz v. Cohen*, 37 AD3d 670, 671 (2d Dept 2007); *See Edelman v. Berman*, 195 AD3d 995 (2d Dept 2021). In determining a motion to dismiss pursuant to *Civil Practice Law and Rules* § 3211(a)(7) the Court should not consider whether a plaintiff can ultimately establish its allegations. *See Kaufman v. Kaufman*, 206 AD3d 805 (2d Dept 2022).

***Plaintiff's First Cause of Action (Defendant BMF Advance) - Vacate the Judgment Based***

12

[* 12]

*upon Alleged Usury*

In the instant motion to dismiss one of the arguments made by Defendants is that the relief sought by Plaintiffs must be dismissed as a matter of law. The Defendants assert that the criminal usury statute is not a basis for an affirmative claim and that the documentary evidence presented demonstrates that the agreement between the parties was not a loan, and therefore the agreement was not subject to the usury statutes. Prior to determination of the applicability of usury to the instant Agreement the Court must determine the nature of the agreement; is it an agreement to purchase receivables or a loan. When determining the nature of an agreement to purchase receivables, the language of the nature of the contract is not conclusive, rather the contract "must be considered in its totality and judged by its real character, rather than by name, color or form which the parties have seen fit to give it." *LG Funding, LLC v. United Senior Props of Olathe, LLC*, 181 AD3d 664 (2d Dept 2020). A court considering an agreement to purchase receivables must determine whether the party purchasing the receivables is entitled to repayment under all circumstances, since unless principal sum advanced is repayable absolutely, the transaction cannot be a loan. *See Rubenstein v. Small*, 273 AD 102 (1st Dept 1947). In making this determination a court must weight three (3) factors as to whether repayment is absolute or contingent: (1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term and (3) whether there is any recourse should the merchant declare bankruptcy. *See LG Funding LLC v. United Senior Properties of Olathe, LLC*, 181 AD3d at 666; *K9 Bytes, Inc. v, Arch Capital Funding, LLC*, 56 Misc.3d 807, 816 (Sup. Ct., Westchester Cty., 2017); *See also Pirs Capital, LLC v. D & M Truck, Tire & Trailer Repair, Inc.*, 69 Misc3d 457 (Sup. Ct, NY Cty., 2020); *Retail Capital, LLC v. Spice Intentions, Inc.*, 2017 WL 123374 at *2 (Sup. Ct., Queens Cty, 2017). Unless a principal sum advanced is repayable

13

absolutely the transaction is not a loan." *LG Funding, LLC v. United Senior Properties of Olathe, LLC*, 181 AD3d at 666. Further, "[t]o determine whether a transaction constitutes a usurious loan, [the agreement] must be considered in its totality and judged by its real character, rather than by name, color, or form which the parties have seen fit to give it."

The record before this Court contains a copy of an agreement entitled "Secured Purchase Agreement" [hereinafter "Agreement"] dated April 26, 2022, a copy of the pleadings, the affirmation of Defendant's counsel, a copy of an affidavit of confession of judgment dated April 27, 2022, a copy of a judgment of confession dated July 19, 2022 (Index # EF004023-2022), an Affidavit of Facts of Gavriel Yitzchakov dated July 1, 2022 in support of the filing for a judgment, a copy of Plaintiff's remittance history filed August 12, 2022 (in opposition to Motion #1), Plaintiff's proof of wire transfer in the amount of $9,994.00 dated June 13, 2022, emails between counsel for the parties as to reconciliation and the Plaintiff's alleged default, and a letter from Plaintiff's attorney to Defendant dated June 14, 2022 requesting "reconciliation."

The first page of the Agreement states in the second paragraph "[m]erchant is selling a portion of a future revenue stream to MBF at a discount, not borrowing money from BMF. Therefore, there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by BMF." In a section entitled "Sale of Receipts," Section 1.10, the agreement provides that "Merchant and BMF agree that the Purchase Price under this Agreement is in exchange for the Purchase Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from BMF to Merchant." The Agreement further provides in section 1.10 that "[i]n no event shall the aggregate of all amounts or any portion thereof be deemed as interest hereunder and in the event it is found to be interest despite the parties hereto specifically representing that it is NOT interest, it shall be found that no sum

14

[* 14]

charged or collected hereunder shall exceed the highest rate permissible at law." Furthermore, section 1.10 expressly provides that "[a]s a result thereof, Merchant knowingly and willingly waives the defense of usury in any action or proceeding." The Court must apply the three (3) factors set forth in forth in *LG Funding, LLC* to distinguish between loans and receivable purchases.

The first prong of the test is whether the contract has a reconciliation provision that allows the merchant to seek adjustments of the amount remitted to the purchaser. In this matter, the Agreement contains a reconciliation provision, Section 1.4 of the Agreement provides that "every two (2) calendar weeks after the funding of the Purchase Price to Merchant, Merchant may give notice to BMF to request a decrease in the Remittance. The amount shall be decreased if the amount received by BMF was more than the Purchased Percentage of all revenue of Merchant since the date of this Revenue Purchase Agreement." The calculation of the modification of the remittance in the reconciliation provision is determined "to more closely reflect the Merchant's actual receipts by multiplying the Merchant's actual receipts by the Purchased Percentage divided by the number of business days in the previous two (2) calendar weeks." Plaintiffs assert that no reconciliation ever occurred, and that the reconciliation provision was a sham to hide a usurious loan. Plaintiffs' support for this assertion is a letter dated June 14, 2022, from counsel to Defendants and an email "thread" beginning June 15, 2022 with an email from Plaintiff Joel Reich to his counsel including bank statements and bank login information and continuing "arguments" between Plaintiff's counsel (Isaac Stern of the Levenson Law Group) and Gabe Isaacov as to compliance with the reconciliation provision of

15

[* 15]

the Agreement.[7] The essence of the email exchange between Stern and Isaacov is that Defendant could not engage in reconciliation based upon the Plaintiffs' failure to provide Defendant with all of the accounts requested for reconciliation and that the reconciliation was sought after the Plaintiff complied with only one (1) requirement of the agreement to remove them from default (payment of two payments on June 13, 2022). The evidence presented by Plaintiff does not demonstrate that there was no reconciliation provision in the Agreement or that it was a sham to hide a usurious loan. Rather, the emails demonstrate that the Plaintiffs and Defendants were operating under the belief that the Agreement contained a reconciliation provision but disagreed whether reconciliation was required based upon documents sought by Defendants and whether Defendants adjudged Plaintiffs in default at the time of the reconciliation request.

The next prong of the test is whether the transaction is for a fixed or finite term or for a non-finite term. Loans generally consist of a face value that must be repaid with interest over a specific finite time period. *See Pirs Capital, LLC v. D & M Truck, Tire & Trailer Repair, Inc.*, 69 Misc3d at 463. An agreement for purchase of future receivables has a "non-finite term" because the time to complete the transaction contemplated by the agreement is contingent on an outside factor, which is customers shopping and paying the merchant for products or services which creates receivables that are available to be collected by the purchaser. *See Id.*; *See also IBIS Capital Group, LLC v. Four Paws Orlando, LLC*, 2017 NY Slip Op. 30477 [U], at 5*, 2017 WL 1065071 (Sup Ct, Nassau Cty, 2017). In this action the Agreement has repayment terms that are non-finite. Section 1.2 entitled "Term of Agreement" states "[t]his Agreement shall

---

[7] The emails contain numerous personal threats between counsel and Gabe Isaacov regarding advertisements indicating that if Gabe Isaacov "tried to abuse or extort you like he has abused or extorted our client please call the Law office of Levenson Law, LLC" and other personal attacks of Isaacov's character known to Plaintiff's counsel.

16

remain in full force and effect until the entire Purchased Amount and any other amounts due are received by BMF as per the terms of this Agreement." Additionally, the terms are set forth in the first paragraph of the first page under the title PURCHASE AND SALE OF FUTURE RECEIVABLES: "Merchant hereby sells, assigns, and transfers to BMF…in consideration of the "Purchase Price" specified below, the Purchased Percentage of all of the Merchant's future accounts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors…. for the payments due to Merchant as a result of Merchant's sale of goods and/or services…until the 'Purchase Amount has been delivered by or on behalf of Merchant to BMF.'" Therefore, there is no finite term for the transaction demonstrating a receivable purchase, not a loan.

The third prong of the test is whether the purchaser has any recourse in the event of a merchant's bankruptcy. An agreement may be treated as a loan if the purchaser has recourse, often through a personal guaranty. *See K9 Bytes, Inc. v, Arch Capital Funding, LLC*, 56 Misc3d at 816-818. Section 3 of the Agreement addresses events that result in default of the Agreement and remedies for the default by Plaintiff. Section 3.1 specifies events of default and does not include bankruptcy as one of those events. Plaintiff Joel Reich also provided a personal guaranty under a document entitled "SECURITY AGREEMENT AND GUARANTY" which does not require that as part of his personal guaranty he be required to perform the merchant's obligations under the Agreement if the merchant files for bankruptcy. The personal guaranty is included in the section entitled "GUARANTY OF PERFORMANCE" and states "[a]s an additional inducement for BMF to enter into this Agreement, the undersigned Guarantor(s) hereby provides BMF with this Guaranty. Guarantor(s) will not be personally liable for any amount due under this Agreement unless Merchant commits an Event of Default pursuant to Paragraph 3.1 of this

17

[* 17]

Agreement." Bankruptcy is not an "Event of Default" as set forth in paragraph 3.1 of the Agreement. Further, Section 3.2 of the Agreement entitled "Limited Personal Guaranty" indicates that "[i]n the Event of a Default, BMF will enforce its rights against the guarantors of this transaction. Said Guarantors will be jointly and severally liable to BMF for all of BMF's losses and damages, in additional [sic] to all costs and expenses and legal fees associated with such enforcement." Again, this section does not require Plaintiff Reich to guarantee anything in the event of the merchant's bankruptcy, since this section is only triggered by an "Event of Default," which does not include bankruptcy. Therefore, the recourse provision of the Agreement also demonstrates that this is a receivable purchase, not a loan.

Based upon the review of the documents submitted in this matter, specifically the language within the Agreement itself, which is unambiguous, the Court finds that the Agreement between the parties was a purchase of future receivables, not a loan.

After determination of the nature of the Agreement, the Court can now address Plaintiff's cause of action seeking vacatur of the Confession of Judgment and invalidation of the underlying Agreement based on usury. In New York there is a presumption that an arm's length transaction between negotiating parties is not usurious. *See Giventer v. Arnow*, 37 NY2d 305 (1975); *K9 Bytes, Inc. v. Arch Capital Funding, LLC*, 56 Misc3d 807 (Sup. Ct. Westchester Cty. 2017). The Appellate Division, Second Department has stated that "[t]he rudimentary element of usury is the existence of a loan or forbearance of money, and where there is no loan, there can be no usury, however unconscionable the contract may be." *LG Funding, LLC v. United Senior Properties of Olathe, LLC*, 181 AD3d 664, 665 (2d Dept 2020). The evidence presented in this matter demonstrates that the Agreement was a receivables purchase, not a loan and as such the Agreement is not subject to New York's usury statutes, since usury is inapplicable in the absence

18

[* 18]

of a loan. *See Donatelli v. Siskind*, 170 AD2d 433, 434 (2d Dept 1991). "The rudimentary element of usury is the existence of a loan and where there is no loan, there can be no usury, however unconscionable the contract may be." *Principis Capital, LLC v. I Do, Inc.*, 201 AD3d 752 (2d Dept 2022).

Plaintiff cites *Penal Law* § 190.40, criminal usury, as an affirmative defense and basis for vacatur of the Confession of Judgment and the underlying Agreement. However, it is well settled law that there is no private right of action for criminal usury pursuant to *Penal Law* § 190.40. See FCI Enterprises, Inc. v. Richmond Capital Group, LLC, 2019 WL 1297984 (Sup CT, NY Cty 2019). Additionally, criminal usury under *Penal Law* § 190.40 is only a defense to an action to recover repayment of a loan, not the basis for a cause of action where affirmative relief is sought. *See Paycation Travel, Inc. v. Glob Merchant Cash, Inc.*, 192 AD3d 1040, 1041 (2d Dept 2012).

The Court has considered the arguments presented by the parties and has already determined that the Agreement between the parties is an agreement to purchase receivables, not a loan. Considering there is no private right of action for criminal usury as set forth in New York Penal Law and it can only be raised as a defense to an action for repayment of a loan, not affirmative relief and since this Court has determined that the Agreement between the parties is not a loan, Plaintiffs cause of action alleging that the underlying Agreement is a criminally usurious loan must fail as a matter of law pursuant to *Civil Practice Law and Rules* §§ 3211(a)(1) and (7). As such, Defendant has demonstrated an entitlement to dismissal of Plaintiff's first cause of action for vacatur of judgment due to usury under *Civil Practice Law and Rules* § 5015(a)(3) and all other relief sought.

[* 19]

***Plaintiff's Second Cause of Action (Defendants BMF Advance and Gavriel Yitzchakov) – Vacate the Judgment Based Upon Refusal to Reconcile***

In the second cause of action the Plaintiffs seek vacatur of the Confession of Judgement and invalidation of the underlying Agreement based upon the Defendants failure to engage in reconciliation after requested by Plaintiff. Plaintiff alleged that the fixed and absolute payments and provisions of the Agreement are a sham to disguise that the Agreement was really a loan. The Plaintiff alleges that the lack of the existence of a reconciliation department, the fact that there was no one trained or dedicated to performing reconciliation, that there is no contact information for the reconciliation department in the Agreement and there are no terms in the Agreement indicating how to request a conciliation demonstrate that the Agreement was a disguised loan.

In opposition the Defendant asserts that the provision entitled "[a]djustments to the remittance" is the reconciliation provision in the Agreement in that it allows adjustments to the amounts debited from the Merchant based upon cash flow or "lack thereof" citing *K9 Bytes, Inc. v. Arch Corp. Funding, LLC*, 56 Misc3d 807, 817 (NY, Sup. Ct. 2017). Additionally, the Defendant compares the adjustment section in the Agreement with the reconciliation provision requirements set forth in *K9 Bytes* noting they are identical. Defendant asserts that the adjustment section contains all the requirements required to inform Plaintiff of the basis for a reconciliation and the procedure to obtain same. Specifically, Defendant argues the adjustment section allows for the amount of a merchant's payments to be changed upon its receivables and therefore the payments are not fixed repayments of "principal", and any increase or decrease is based solely on receivables, not interest. The Defendant contends these terms also demonstrate that the Agreement is not a loan. This Court has already determined that the Agreement contains

20

a valid reconciliation provision demonstrating that the Agreement is one for purchase of receivables, not a loan. Similarly, the Court finds that the instant Agreement has a valid reconciliation provision, which also demonstrates the Agreement between the parties is not a loan.

Turning to Plaintiff's alternative argument in the second cause of action, that the Defendants were required to reconcile when requested by Plaintiffs on June 13, 2022, as there was no "[e]vent of [d]efault" that had occurred at the time of the request. In support of their Motion to Dismiss Defendant contends that the documentary evidence demonstrates that Plaintiff was not eligible for a reconciliation as Section 1.4 since that remedy it is only available if the merchant has not defaulted. According to Defendant the Plaintiff/Merchant defaulted "almost immediately after requesting a reconciliation" and was in default until the Confession of Judgment was filed a month later, July 2022. Therefore, Defendant states the valid reconciliation portion of the Agreement was inapplicable to Plaintiff's request on June 13, 2022, due to Plaintiff's default and as such cannot be the basis for vacatur of the Confession of Judgment.

A review of Section 1.4 of the Agreement demonstrates that there is a reconciliation portion of the Agreement, contrary to Plaintiff's argument. Section 1.4 sets forth terms of when an adjustment can be sought by the merchant. Specifically, the section states that the adjustment can occur every two (2) calendar weeks after the funding of the purchase price to the merchant *as long as the merchant has not defaulted*. The adjustment section also provides a process for a merchant to obtain an adjustment: Merchant to "give notice to BMF to request a decrease in Remittance." Section 1.4 defines the formula that BMF will use to determine if the merchant is eligible for an adjustment. Plaintiff is correct that there is no contact information for a

21

[* 21]

reconciliation department within Section 1.4, but they have also failed to include any statute or case law indicating that lack of contact information invalidates an adjustment section or the entire Agreement. This Court has already determined that the instant Agreement is not a loan, therefore any argument asserting that the use of the adjustment terms was for the purpose of disguising the Agreement as a loan is moot.

According to Defendant the "adjustment" section of the Agreement, Section 1.4, only requires the Defendant to conduct a reconciliation or adjustment if the merchant has not defaulted. Defendant contends that the Plaintiff defaulted almost immediately after requesting reconciliation and that as a result reconciliation was not an available remedy to Plaintiff due to their default status. Plaintiff asserts that the Defendant accepted a wire transfer on June 13, 2022, and payments for two (2) days after based upon an email exchange which indicated that the wire payment receipt would result in the Plaintiff not being considered in default. The Plaintiff therefore contends that they were not in default on June 14, 2022, when their counsel sought the reconciliation via a letter (also annexed to the Complaint).

In determining whether the reconciliation portion, Section 1.4, was triggered by Plaintiff's written request for reconciliation on June 14, 2022, the Court must consider the evidence submitted as to whether the Plaintiff was in default at the time of the request. The Defendant has included a remittance history that demonstrates that Plaintiff's payments from June 17, 2022, to July 1, 2022, were returned as insufficient. The same remittance demonstrates that Defendant received a payment on June 13, 2022, of $4,997, an "incoming wire" of $9,994, a payment on June 14, 2022, of $4,997, and a payment on June 15, 2022, of $4,997. Plaintiff annexed to their Complaint an email exchange between Plaintiff Joel Reich and Gabe Isaacov on June 13, 2022, regarding the Plaintiffs default that was as follows:

[* 22]

> **Joel Reich:** "You agreed I should send you two payments now as long [sic] nothing else bounces and that will take me out of default. So I can wire you and cover?
> **Gabe Isaacov:** "Yes confirmed. You'll need to make up the rest of the bounces later this week." And no more bounces at all.
> **Joel Reich:** "But as long as there are no more bounces I am out of default please, correct?"
> **Gabe Isaacov:** "Ok"
> The next email includes the wire sent by Reich.

(emphasis added)

Based upon the list of remittance provided by Defendants and not challenged by Plaintiffs, subsequent to the wire being sent by Plaintiff on June 13, 2022, the Plaintiff sent payments on June 14 and 15 and again defaulted on June 16. The email exchange between Reich and Isaacov demonstrates that Reich was aware that he would only be considered "out of default" if there was an immediate payment on June 13, 2022, which included two (2) payments **_and_** there were no more "bounces." At the time counsel for Plaintiff requested reconciliation on June 14, 2022, the Plaintiff's payments from June 13 and 14 had cleared and were accepted by Defendant. Therefore, on June 14, 2022, when the reconciliation request was made by Plaintiff, they had satisfied the first condition set forth by Isaacov to ensure they were not considered in default. However, despite sending two (2) payments on June 13, 2022, and payments on June 14 and June 15, Plaintiffs again defaulted two (2) days later, on June 16 due to insufficient funds. The emails between Plaintiff Reich and Isaacov demonstrate that the Plaintiff would only be considered "out of default" if he made the requested payments **_and_** did not have any further payments returned for insufficient funds. Unfortunately, forty-eight (48) hours after the request the Plaintiff again had a returned payment due to insufficient funds. The return of the payment due to insufficient funds, an event of default under Section 3.1(a) of the Agreement, triggered the contingency set forth in the email exchanges between Reich and Isaacov and rendered the

23

[* 23]

Plaintiff in default as of June 13, 2022. Therefore, Plaintiff was retroactively in default on June 14, 2022, based upon the insufficient funds on June 16, 2022. The default status continued due to insufficient funds being available for payments from June 16, 2022, until July 1, 2022, when the Confession of Judgment was filed. Based upon the Plaintiffs failure to complete both requirements set forth by Isaacov in his email to ensure they were not in default on June 14, 2022, Plaintiff was in default of the terms of the Agreement at the time the reconciliation was sought. As such, Section 1.4, Adjustment of Remittance, was not available to Plaintiffs based upon their status of "default" at the time of the written request on June 14, 2022. The Defendants have demonstrated through documentary evidence a basis for dismissal of the second cause of action for Defendants refusal to reconcile pursuant to *Civil Practice Law and Rules* §§ 3211(a)(1) and (7).

### *Plaintiff's Third Cause of Action (Defendant BMF) for Fraud*

With regard to Plaintiff's third cause of action for fraud, Defendant has argued that Plaintiffs have no cause of action for fraud because the Plaintiff's claim of fraud is truly an allegation of breach of contract. The primary fraud claim presented by the Plaintiff is a misrepresentation as to the fees assessed the Plaintiffs and their application as to the Agreement. The Defendant assert that the fraud claim is made without any other breach of contract claim and as such is insufficient to maintain a cause of action for fraud. According to Defendant the fraud claim is insufficient since the fees were clearly disclosed in the Agreement with specificity as to their purpose and amount. The Defendant contends that the Plaintiffs have failed to plead any separate duty other than the duty to perform under the Agreement, failed to pleas a fraudulent misrepresentation collateral or extraneous to the Agreement or special damages that were caused

24

by the misrepresentation and are unrecoverable as contract damages.

The documentary evidence demonstrates the parties considered and entered into a legitimate merchant purchase advance agreement, not a loan. "Elements of a cause of action [alleging] fraud require a material misrepresentation of a fact, knowledge of its falsity, intent to induce reliance, justifiable reliance by the Plaintiff and damages." *Garendean Realty Owner, LLC v. Lang*, 175 AD3d 653, 653 (2d Dept 2019) *quoting Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 NY3d 553, 559 (2009); *See also Ferrarella v. Godt*, 131 AD3d 563 (2d Dept 2015); *Nafash v. Allstate Ins. Co.*, 137 AD3d 1088 (2d Dept 2016). Additionally, a claim sounding in fraud must be plead in particularity pursuant to *Civil Practice Law and Rules* § 3016(b).

The Plaintiff's third cause of action is not plead with particularity as to the required elements. Plaintiff's Complaint contains no specific actions as to how the Plaintiffs were fraudulently induced into signing the contract. Rather, Plaintiffs argue that the "fraud" is the type of contract itself, that it is not an agreement to purchase receivables but rather a usurious loan. For the reasons set forth at length above, this Court has ruled, as a matter of law, that the contract at issue is not a loan and therefore is not usurious. As such, an argument that the fraud is a misrepresentation of the nature of the type of Agreement between the parties does not allege an actionable fraud or misrepresentation on the part of the Defendants. Additionally, the documentary evidence annexed to the Complaint, Plaintiff's Order to Show Cause (Motion #1), and the instant Motion to Dismiss demonstrates there was not a misrepresentation of the basis of the fees or knowledge of falsity other than conjecture, assumption or speculation by the Plaintiff and his counsel. Based upon this Court's prior determination that the Agreement is not a loan, and based upon the allegations contained in the Complaint, affording the allegations a liberal

25

construction, accepting the facts alleged to be true, and granting Plaintiffs the benefit of every possible favorable inference, the Court concludes that the documentary evidence in this matter demonstrates there was not a misrepresentation of the basis of the fees or any other terms of the agreement as they were fully disclosed in the Agreement and plainly stated as an addendum to the Agreement. Therefore, based upon the evidence, Defendant has sufficiently demonstrated their entitlement of the dismissal of Plaintiff's third cause of action for fraud pursuant to *Civil Practice Law and Rules* §§ 3211(a)(1) and (7).

***Plaintiff's Fourth Cause of Action (Defendant BMF Advance) for Unconscionability***

Next, Plaintiff's fourth cause of action seeks the Court vacate the Judgement and invalidate the underlying Agreement based upon unconscionability. Plaintiffs allege in their Complaint that the Agreement is an "unconscionable contract of adhesion" that was not negotiated at arm's length as it contained "one-sided terms" that "prey upon the desperation of small business and their individual owners and help conceal the fact that each of the transactions…are really loans." Plaintiff delineates those portions of the Agreement that are "one-sided terms" that render the Agreement unconscionable in addition to an allegation that there are "numerous knowingly false statements." Those "knowingly false statements" include that the transaction is really a loan, that the daily payment is a good-faith estimate of the merchant's receivables and that the fixed daily payment is for the merchant's convenience. Further, Plaintiff summarily states that the Agreement is unconscionable because "it is designed to fail." Additionally, Plaintiff states the Agreement is unconscionable since it contains "numerous improper penalties" such as entitling the Defendant to "exorbitant attorneys fees," the right to accelerate the entire debt upon an event of default and requiring the merchant to turn

26

[* 26]

over 100% of its receivables if it misses one fixed daily payment.

"An unconscionable agreement has been described as one in which 'no [person] in his [or her] senses and not under delusion would make on the one hand, and [which] no honest and fair [person] would accept on the other, the inequality being so strong and manifest as to shock the conscience and confound the judgment of any [person] of common sense." *RTT Holdings, LLC v. Nacht*, 206 AD3d 836, 841 (2d Dept 2022) *quoting Christian v. Christian*, 42 NY2d 63, 71 (1977); *See also Hume v. United States*, 132 U.S. 406, 411 (1889). Unconscionability requires "some showing of 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Matter of State of New York v. Avco Fin. Serv. of N.Y.*, 50 NY2d 383, 389 (1980) *quoting Williams v. Walker-Thomas Furniture Co.*, 350 F2d 445, 449 (D. C. Cir. 1965). Further, "[a] determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made." Gillman v. Chase Manhattan Bank, 73 NY2d 1 (1988); *See also State of New York v. Wolowitz*, 96 AD2d 47, 67 (2d Dept 1983). "The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract, per se." *State of New York v. Wolowitz*, 96 AD2d at 67. Examples of the procedural element of unconscionability "include…high pressure commercial tactics, inequality of bargaining power, deceptive practices and language in the contract and an imbalance in the understanding and acumen of the parties." *Id.* at 67-68. In contrast examples of contractual provisions that are unconscionable include "inflated prices, unfair termination clauses, unfair limitations on consequential damages and improper disclaimers of warrant." *Id.*

The documentary evidence before this Court demonstrates that Plaintiff has not

27

established procedural unconscionability.  Plaintiffs have not alleged that the Defendants engaged in actions that included high pressure commercial tactics or that there was an imbalance of bargaining power or deceptive practices in entering into the Agreement.  Plaintiff makes conclusory statements such as the Agreement is one that was not negotiated at arms-length but does not provide any factual support demonstrating that imbalance.   The Complaint is replete with conclusory statements as to the procedural unconscionability of the agreement such as the terms are one-sided, and these types of agreements are used to "prey upon the desperation of small business and their individual owners" both sweeping statements with no factual support provided.   This Court has no evidence before it that at the time the parties entered into the Agreement in April 2022 that Plaintiff business and their owner, Plaintiff Joel Reich, were not financially solvent or in "desperation."  Rather, the evidence belies that belief.  The Plaintiffs signed an Agreement that states in Section 2.9 that the business was not insolvent and did not contemplate filing for bankruptcy in the next six (6) months and had not consulted a bankruptcy attorney or filed a bankruptcy petition under Title 11 of the United States Code.  Further, the Plaintiffs warranted to Defendants in Section 2.9 "that id [did] not anticipate filing any such bankruptcy petition and it [did] not anticipate that an involuntary petition [would] be filed against it."   The Court finds the Plaintiffs assertion in their cause of action that the agreement is "one-sided" and that the agreement was not arms-length is countered by Section 4.7 of the Agreement entitled Interpretation, which states "[a]ll parties hereto are sophisticated commercial parties and have reviewed this Agreement with attorney of their own choosing and have relied only on their own attorneys' guidance and advice or has [sic] had the opportunity to have their own attorney review this Agreement before executing it."  As stated recently by two (2) Supreme Court Judges in differing counties, "[p]urchases and sales of future receivables and sales

28

[* 28]

proceeds are common commercial transactions expressly contemplated by the Uniform Commercial Code." *IBIS Capital group, LLC v. Four Paws Orlando, LLC*, 2017 WL 1065071, *2 (Nassau Cty Sup Ct 2017); *See also American Water Restoration, Inc. v. AKF, Inc.*, 74 Misc3d 12013(A) *2 (Ontario Cty, Sup Ct, 2022). The Plaintiffs entered into the Agreement warranting they were a "sophisticated commercial party" who reviewed the Agreement with their attorney knowing the types of provisions included in the Agreement and retroactively seeks this Court find the Agreement unconscionable because they do not agree with the result of the enforcement of the provisions of the Agreement, all of which were known to Plaintiffs when they signed the Agreement in April 2022. Remorse is not a factor for which a court can apply to a contract and find provisions in hindsight unconscionable. Based upon a review of the documentary evidence provided in this matter, Defendants have demonstrated their entitlement to dismissal of Plaintiffs fourth cause of action pursuant to *Civil Practice Law and Rules* §§ 3211(a)(1) and (7).

### *Plaintiff's Sixth and Seventh Causes of Action[8] under the Racketeer Influenced and Corrupt Organizations [hereinafter "RICO"] Act, 10 U.S.C. § 1962(c)*

Plaintiff alleges that all of the Defendants in the instant action are "persons" as defined by 18 U.S.C. § 1961(3) and 18 U.S.C. § 1962(c) as they each is an individual capable of holding a legal interest in property. Further, Plaintiff asserts that all Defendants, except Steven Zakharyayev are agents or owners of Defendant BMF. As to Defendant Steven Zakharyayev, Plaintiffs contend that he has an ongoing business relationship with the Defendants as he "frequently represents the Defendants in these matters" and he "participated in the Enterprise."

---

[8] Plaintiff's Amended Complaint e-filed on August 30, 2022 fails to contain a Fifth Cause of Action.

29

[* 29]

According to Plaintiff the Defendants and their investors, including Defendant Steven Zakharyayev are an Enterprise as defined by 18 U.S.C. §§ 1961(4) and 1962(c). Plaintiff alleges the "enterprises" common goal is "soliciting, funding, servicing and collection upon usurious loans that charge interest at more than twice the enforceable rate under the laws of New York and other states which benefits BMF." Further, Plaintiff argues that the debt created as part of the instant Agreement is an unlawful debt as defined by 18 U.S.C. § 1962(c) and (d) and 18 U.S.C. § 1961 (6) because it violates criminal usury statutes, and the rates are more than "seven [sic] the legal rate permitted under New York *Penal Law* § 190.40. As to the "enterprises" conduct, the Plaintiff asserts that their conduct constitutes "fraud by wire" as defined by 18 U.S.C. § 1343, which is a "racketeering activity" as defined by 18 U.S.C. 1961(1).

In terms of the requirement of interstate commerce the Plaintiffs allege that the "enterprise" engages in daily business activities from their offices in New York to originate, underwrite, fund, and collect on the alleged usurious loans made in New York but disseminated throughout the United States via interstate emails, mail, wire transfers and bank withdrawals.

Plaintiffs contend that their injury due to the actions of this "enterprise" is the "thousands of dollars in improperly collected criminally usurious loan payments." They also argue they gave suffered damages by incurring attorneys' fess and costs in defending the Defendants' criminal activities. The Plaintiffs seek treble damages plus costs and attorneys' fees.

Defendant seeks dismissal of the sixth and seventh causes of action based upon Plaintiffs failure to establish a RICO claim that is predicated on collection of an unlawful debt, since the transaction between the parties is not a loan subject to usury laws. Plaintiff raises four (4) other basis for dismissal of these causes of action including: (1) Plaintiffs failure to plead with particularity their RICO claim predicated on a pattern of racketeering activity, (2) Plaintiffs

30

failure to plead the existence of a RICO "enterprise," (3) Plaintiffs inability to establish an injury to their business or property and (4) Plaintiffs failure to state a claim against Defendant Zakharyayev, Defendant BMF's attorney, as an outsider because he cannot be held liable under RICO.

Section 1962(c) of RICO makes it unlawful for a person "employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce to conduct or participate, directly or indirectly, in the conduct of such enterprises affairs through a pattern of racketeering activity or collection of unlawful debt." RICO defines "unlawful debt" in 18 U.S.C. § 1961(6) as a debt (A) incurred or contracted in gambling activity which was in violation of the law,,, or which us unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with…the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." Further, RICO Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Offenses under RICO "may be predicated on a single instance of collection of unlawful debt, as well as a pattern of racketeering activity." *United States v. Grote*, 961 F3d 105, 119 (2d Cir. 2020). In the sixth and seventh causes of action the Plaintiffs allege that the Defendants have violated RICO in both ways; by collecting an unlawful debt and by engaging in a pattern of racketeering activity.

"To establish a RICO claim, a plaintiff must show:'(1) a violation of the RICO Statute 18 USC § 1962, (2) an injury to business or property and (3) the injury was caused by the violation of Section 1962." *Defalco v. Bernas*, 244 F3d 286, 305 (2d Cir 2001) *quoting Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F3d 900, 904 (2d Cir 1996); *See also Hecht v,*

31

[* 31]

*Commerce Clearing House, Inc.*, 897 F2d 21, 23 (2d Cir 1990). "To succeed on a RICO claim pursuant to § 1962(c) a plaintiff must show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *FCI Enterprises, Inc. v. Richmond Capital Group, LLC*, 2019 WL1297984 *2 (Sup Ct, Kings Cty 2019) *quoting Defalco v. Bernas*, 244 F3d 286 (2d Cir 2001). The requirements of § 1962 (c) must be established as to each individual defendant. *See United States v. Persico*, 832 F2d 705, 714 (2d Cir 1987).

A RICO claim can also be established by showing "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate directly or indirectly, in the conduct of such enterprises' affairs through a pattern of racketeering activity or collection of unlawful debt." Id; See also *Wade Park Land Holdings, LLC v. Kalikow*, 2022 WL 657664 at *23 (SDNY 2022). Unlawful debt is defined in 18 USC § 1961(6)(B) as any debt "which was incurred…in connection with the business of…lending money or a thing of value at a rate usurious under State or Federal law where the usurious rate is at least twice the enforceable rate."

The basis of the Plaintiffs' RICO claims is that the Purchase Agreement with Defendant is a loan and is subject to New York State usury laws. The arguments raised by Plaintiff are the same as asserted in the prior causes of action and again fail. This Court ahs previously determined that the subject Purchase Agreement is not a loan as Plaintiff asserts. An element of the proof for the RICO claims made by the Plaintiffs is that the Purchase Agreement is a loan subject to the New York usury laws. As the Court has already determined that argument fails, the Plaintiffs causes of action pursuant to RICO must also fail.

Plaintiffs also raise a wire fraud claim which similarly must be dismissed. "To allege wire fraud, the…Plaintiffs must allege a pattern of racketeering: (i) at least two predicate acts of

32

racketeering occurring within a ten -year period (ii) that these predicate acts are related to each other and (iii) that these predicate acts amount to or pose a threat of continuing criminal activity." *Spin Capital, LLC v. Golden Foothill Ins. Service, LLC*, 2023 WL2265717 (Sup Ct, NY Cty 2023) *citing Related Companies, L.P.V. Ruthling*, 2017 WL6507759 at *18 (SDNY 2017). Further, to allege predicate racketeering the Plaintiff "must allege (i) a scheme to defraud, (ii) money or property that is the object of the scheme and (iii) the use of the wires to further the scheme." *Id. citing Empire Merchants, LLC v. Reliable Churchill, LLP*, 902 F3d 132, 139 (2d Cir 2018). All of the Plaintiffs' arguments as to RICO claims must fail as they are predicated upon their argument that the Purchase Agreement should be "recharacterized" as a loan, which this Court has previously stated is an incorrect interpretation of the instant Agreement.

As to the causes of action for conspiracy to commit RICO they fail where no substantive RICO claims can be sustained. *See Pluderman v. Northern Leasing Systems, Inc*. 40 AD3d 366, 368 (1st Dept 2007). Therefore, all of the causes of action asserting conspiracy including the one as to Defendant STEVEN ZAHARYAYEV, the co-Defendants attorney, must be dismissed.

In arriving at this decision, the Court has reviewed, evaluated, and considered all the issues framed by these motion papers and the failure of the Court to specifically mention any particular issue in this Decision and Order does not mean that it has not been considered by the Court in light of the appropriate legal authority.

Accordingly, it is hereby

**ORDERED** that Defendants Motion to Dismiss (Motion #2) is granted in its entirety.

Dated: Goshen, New York

March 15, 2023

_____
HON. ELENA GOLDBERG-VELAZQUEZ, J.S.C.

To:
LEVENSON LAW GROUP
SCOTT LEVENSON, ESQ.
Attorney for Plaintiff
(via e-file)

WELLS LAW, LLP
STEVEN WELLS, ESQ.
Attorney for Defendant
(via e-file)

34

[* 34]